(782 P.2d 1241)
No. 62,184

E. MORTON HELLER and BONNIE E. HELLER f/k/a BONNIE E. MCFALL, *Appellants*, v. ANNE Z. MARTIN, EDWIN R. CLARKE, and ED CLARKE CO., *Appellees*.

Opinion filed August 25, 1989.

*Ray E. Simmons*, of Wichita, for appellants.

*Craig W. West* and *Jay F. Fowler*, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, for appellees.

Before RULON, P.J., REES, J., and DEAN J. SMITH, District Judge, assigned.

REES, J.: This is a "wet basement case" brought by the purchasers of a Wichita residence, plaintiffs E. Morton Heller and Bonnie E. Heller (Heller), against the seller of the residence, defendant Anne Z. Martin. Alleging that Martin was liable for breach of contract, commission of a Kansas Consumer Protection Act (KCPA) deceptive act (K.S.A. 50-626), and fraud, Heller sought recovery for actual damages, attorney fees, and punitive damages. The case was tried to a jury on the single theory of breach of contract. The jury returned verdicts finding Martin liable for breach of contract and fixing $6,291 as the amount to be recovered as damages (the "sum [found] necessary to correct the water seepage problem in the basement"). Judgment for Heller was entered in accordance with the verdicts.

Heller appeals from pretrial summary judgment in favor of Martin on Heller's allegations of KCPA violation and fraud, and from the denial of Heller's oral motion at trial to submit the fraud claim to the jury. Heller's goal is recovery of attorney fees and punitive damages.

In substance, this appeal is from denial of Heller's KCPA and fraud claims as a matter of law. The question for our answer is

whether the trial court decision was correct, not whether the grounds upon which it professed to proceed are tenable. See *Johnson v. Boeing Airplane Co.,* 175 Kan. 275, 283, 262 P.2d 808 (1953); *City of Overland Park v. Barnett,* 10 Kan. App. 2d 586, 596, 705 P.2d 564 (1985). The reasons given by a trial court for its decision are immaterial so long as its ruling was correct for any reason. *Prairie State Bank v. Hoefgen,* 245 Kan. 236, 245, 777 P.2d 811 (1989); *Arensman v. Kitch,* 160 Kan. 783, 792, 165 P.2d 441 (1946).

Misrepresentation of a material fact is the core subject here. Heller claims that Martin committed material misrepresentation in connection with the sale of her residence. Specifically, it is claimed that Martin wrongfully failed to inform Heller that a basement "water seepage problem" was extensive and that it would be expensive to fix, that is, that it would be expensive to repair and wholly remedy the "problem."

Heller and Martin contracted on April 6, 1985, for the purchase and sale of Martin's residence. The terms of their agreement appear in a written "Contract for Purchase of Residential Real Estate" signed by Heller as "Buyer" and by Martin as "Seller." It provides that:

"In consideration of the mutual agreements contained herein, Seller agrees to sell and convey to Buyer, and Buyer agrees to buy and pay for, the following described real estate . . . subject to the terms and conditions stated in this contract.
. . . .
"CONVEYANCE TO BE MADE TO: [HELLER]
. . . .
"LEGAL DESCRIPTION: [legal description of the subject residence.]
. . . .
"PURCHASE PRICE: $135,000.00
. . . .
"DATE FOR CLOSING: On or before June 15, 1985
. . . .
"PROPERTY: The real estate described herein . . . .
. . . .
"THE BUYER AND THE SELLER BOTH UNDERSTAND THAT . . . PERFORMANCE HEREUNDER MUST BE IN GOOD FAITH. EACH HAS READ ALL PARTS OF THIS CON-TRACT . . . AND AGREES TO BE BOUND THEREBY . . . .
. . . .
"*Buyer is aware of seepage in the basement, but seller will make effort to have condition corrected.*" (Emphasis added.)

This is a classic bilateral contract. Heller and Martin each promises future performance in consideration for the other's promise of future performance. In sum, Heller promised to pay Martin $135,000, and Martin promised to convey the residence to Heller and to make an effort to have the seepage condition in the basement corrected.

A purpose of KCPA is "to protect consumers from suppliers who commit deceptive . . . practices." K.S.A. 50-623(b).

A commentator has said of KCPA that it is one of a package of legislation enacted by the 1973 legislature "intended to provide a mantle of protection for consumers involved in . . . credit transaction(s) . . . . Consumer credit is . . . a huge business . . . and some abuses have occurred which the [package of] legislation is intended to curb." Clark, *The New Kansas Consumer Legislation*, 42 J.K.B.A. 147 (1973). Nonetheless, the legislatively enacted language of KCPA does not limit its applicability to credit transactions. Thus, in cases such as that now before us, it cannot be held that KCPA is inapplicable because extension of credit is not an element of the subject transaction.

The KCPA provisions particularly applicable to the case before us are these:

"No supplier shall engage in any deceptive act . . . in connection with a consumer transaction." K.S.A. 50-626(a).

"Deceptive acts . . . include . . . the following . . . which is . . . declared to be a violation of [KCPA]:

. . . .

"(3) the intentional failure to state a material fact, or the intentional concealment, suppression or omission of a material fact, whether or not any person has in fact been misled." K.S.A. 50-626(b).

"A consumer who is aggrieved by a violation of [KCPA] may recover . . . actual damages or a civil penalty as provided in K.S.A. 50-636(a) . . . whichever is greater." K.S.A. 50-634(b).

"[T]he court may award to the prevailing party a reasonable attorney's fee . . . if:

"(1) . . . a supplier has committed an act . . . that violates [KCPA] and the prevailing party is the consumer . . . ." K.S.A. 50-634(e).

"The commission of any act . . . declared to be a violation of [KCPA] shall render the violator liable to the aggrieved consumer . . . for the payment of a civil penalty . . . in a sum set by the court of not more than two thousand dollars $2,000 for each violation." K.S.A. 50-636(a).

To determine the application of the foregoing KCPA provisions, one must look to K.S.A. 50-624, where it is provided that:

"As used in [KCPA]:

. . . .

"(b) 'Consumer' means an individual who seeks or acquires property . . . for personal, family, [or] household . . . purposes.

"(c) 'Consumer transaction' means a sale . . . of property . . . to a consumer or a solicitation by a supplier with respect to [a sale of property].

. . . .

"(g) 'Property' includes real estate . . . .

. . . .

"(i) 'Supplier' means a . . . seller . . . or other person who, in the ordinary course of business, solicits [or] engages in . . . consumer transactions, whether or not dealing directly with the consumer."

By KCPA's definitions, Heller was a consumer. Heller was an individual acquiring real estate for personal, family, or household purposes. K.S.A. 50-624(b), (g). If Martin was a supplier, as defined by K.S.A. 50-624(i), the sale of Martin's residence to Heller was a consumer transaction. It was a sale of real estate to a consumer. K.S.A. 50-624(c).

Was Martin a supplier as defined by K.S.A. 50-624(i)? We conclude that she was.

Although not a real estate trader or dealer, that is, a person engaged in the buying and selling of real estate for her own account, as a licensed real estate salesperson Martin solicited consumers to enter into real estate sales transactions. She engaged in that activity in the ordinary course of her business. She met the KCPA definition of supplier. The fact that she was in the employ of or otherwise represented Ed Clarke Company is immaterial. *Her* ordinary business was solicitation of real estate sales. It also is immaterial that the subject residence was owned by her and that, as its owner, she was its seller. Here she solicited persons—Heller—to participate as purchasers of real estate being sold. Moreover, by listing her residence with Clarke and, by necessary implication agreeing to compensate Clarke for the services of its personnel, whomever they may have proved to be, including herself, she placed her residence in Clarke's inventory of properties for which its clients had engaged it to solicit purchasers. That an owner's sale of his or her residence most often is an isolated sale also is immaterial here. Whether Martin was

a disclosed principal of Clarke is of no moment. Agency law is dispositive of no controlling or material issue presented for resolution in this case.

Our disposition of Heller's contentions on appeal concerning the KCPA claim calls for resolution of the question whether, in connection with the Heller and Martin residential purchase and sale transaction, Martin, as a matter of law, *intentionally* failed to state or *intentionally* concealed a material fact. Whether decided by a factfinder or as a matter of law, if Martin did not intentionally fail to state or intentionally conceal a material fact in connection with the transaction, KCPA's grant of discretionary authority to the trial court to award attorney fees is inoperative. See K.S.A. 50-634(e).

It is crystal clear that when the purchase and sale contract was entered into on April 6, 1985, Heller had actual knowledge of the premises defect, the basement water seepage problem. The written contract establishes beyond question that the two parties each had actual knowledge of the defect. Also, by the plain terms of the written contract, Heller accepted Martin's promise to make an effort to correct the defect, a promise made without limitation relating to the magnitude of the defect or the cost to cure it.

The jury found Martin liable for breach of contract in that she did not fulfill her contractual promise to make an effort to have the basement water seepage condition corrected. By the judgment entered on the jury verdicts, Heller has obtained the equivalent of conveyance of the residence with the basement in good condition.

Was Martin also guilty of commission of the KCPA deceptive act defined by K.S.A. 50-626(b)(3)? We are convinced and hold that, as a matter of law, the answer is "no."

The record here discloses not a scintilla of evidence, direct or reasonably inferable, that Martin *intentionally* failed to state a material fact or *intentionally* concealed, suppressed, or omitted a material fact. K.S.A. 50-626(b)(3) requires that the failure to state, concealment, suppression, or omission be intentional. K.S.A. 50-626(b)(3) does not proscribe mere nondisclosure of a material fact.

Viewing the evidence in the light most favorable to Heller, we find that the evidence directly or by reasonable inference supports

these facts: Prior to April 6, 1985, there was a defect in the residence (the basement water seepage problem). Martin and Heller both had actual knowledge of the defect's existence; neither Martin nor Heller had particular knowledge of the nature and magnitude of the defect nor did either know the probable cost to cure the defect. Given these circumstances, it was agreed by Heller and Martin in their April 6, 1985, purchase and sale contract that Martin would remedy the defect; she promised to cure the defect. Martin's promise was not a false promise, that is, when she made that promise she intended to keep it; it was not a promise that she did not intend to perform. If Tom Tomlin's testimony is taken as true, on or shortly before June 6, 1985, which was two months after the parties had made their contract and nine days or so prior to the agreed closing date of June 15, 1985, Martin learned from Tomlin of Mid-West Waterproofing, Inc., that the defect was "extensive" and that to cure it would be "expensive." Martin employed Mid-West to perform certain specific work toward repair of the defect. The particular work undertaken and performed by Mid-West on June 6, 1985, was the repair of the then visible 15 linear feet of cracks in the basement's west wall. Prior to and at the closing on June 15, 1985, Heller had actual, specific knowledge of the repair work performed by Mid-West.

When Martin delivered Mid-West's written guaranty to Heller at the June 15, 1985, closing, she affirmatively represented to Heller that repair work as described and executed by Mid-West had been performed. At the closing, Heller had no objection as to the work that had been done. Heller testified Martin made no misrepresentation. Ultimately, of course, Heller experienced "flooding" in the basement and thereafter cured the defect at a cost of $6,291. Martin's promise to cure the defect has been enforced by the breach of contract judgment against her.

Bearing in mind that both Heller and Martin had actual knowledge of the defect, that each knew the other had actual knowledge, that Martin truthfully informed Heller of the exact and full details of the repair work she had caused to be performed by Mid-West, and that Martin denies Tomlin told her the defect was extensive and its cure would be expensive, we conclude the evidence was insufficient to support a finding that Heller had

satisfied the burden of proof to establish by a preponderance of the evidence that Martin's nondisclosure to Heller, prior to or at closing, was intentional. Perhaps Martin's "nondisclosure" was thoughtless, but it was not intentional. *Cf. Lynn v. Taylor*, 7 Kan. App. 2d 369, 642 P.2d 131, *rev. denied* 231 Kan. 801 (1982) (fraud case where seller, having termite inspection report that had been prepared at buyer's request and on buyer's behalf and that was unfavorable, obtained and furnished to buyer a favorable termite inspection report; seller retained and did not disclose existence of first report).

We find no evidence to enhance mere nondisclosure by Martin to intentional nondisclosure. In this respect, we find analogous the rule spoken of in *Edwards v. Phillips Petroleum Co.*, 187 Kan. 656, 659, 360 P.2d 23 (1961), that "[m]isrepresentations in order to constitute actionable fraud . . . cannot ordinarily be predicated on unfulfilled promises." Here, with the defect having been made a subject of the parties' written contract, the thrust of Heller's KCPA complaint is that Martin failed to inform Heller she had not fulfilled her promise to cure the defect. That does not amount to intentional failure to disclose as proscribed by K.S.A. 50-626(b)(3).

Upon reasoning that varies from that adopted by the trial court, we conclude it correctly held that, as a matter of law, Heller was not entitled to recover for violation of KCPA.

We turn to the question of Heller's claim for recovery of punitive damages on the ground of fraud.

Heller makes no serious contention that there was fraud in the inducement of the April 6, 1985, contract. Fundamentally, this is a contract action in which actual damages were sought and have been recovered for breach of the contract. No punitive damages were recoverable in the absence of additional damages caused by the independent tort of fraud. See *Osgood v. State Farm Mutual Auto Ins. Co.*, 848 F.2d 141, 143-44 (10th Cir. 1988); *Guarantee Abstract & Title Co, v. Interstate Fire & Cas. Co.*, 232 Kan. 76, 78, 652 P.2d 665 (1982). There is no evidentiary showing here of damages suffered by Heller and caused by fraud that were in addition to and beyond the breach of contract damages suffered by Heller.

A breach of contract action cannot be turned into an action for

fraud by merely alleging reliance on representations that the contract would be performed and detriment from its breach. *Brown v. Chaffee*, 612 F.2d 497, 503 (10th Cir. 1979). The independent tort of fraud must cause damages beyond those suffered by breach of contract. *Mackey v. Burke*, 751 F.2d 322, 329 (10th Cir. 1984).

As a matter of law, Heller was not entitled to recovery of punitive damages for fraud. There was no showing of damages beyond those suffered by reason of the breach of contract.

In an argument that impresses us as no more than incidental, Heller asserts that Martin wrongfully failed to disclose that the Real Estate Brokers' and Salespersons' License Act (K.S.A. 58-3034 *et seq.*) did not apply to this transaction. We fail to comprehend how it can be said that Martin breached any duty by failing to provide legal advice to Heller.

Affirmed.