**PACIFIC EMPLOYERS INSURANCE COMPANY, a California Corporation, Plaintiff,**

v.

**P.B. HOIDALE COMPANY, INC., Employers Mutual Casualty Company, and Lightner–Kanaga Insurance, Inc., Defendants.**

Civ. A. No. 87–1384–B.

United States District Court, D. Kansas.

April 1, 1992.

See also 789 F.Supp. 1112.

Timothy J. Finnerty, McDonald, Tinker, Skaer, Quinn & Herrington, Wichita, Kan., Debra J. Arnett, Hartley, Nicholson & Hartley, P.A., Paola, Kan., for Pacific Employers Ins. Co.

Jeffery L. Carmichael, Morris, Laing, Evans, Brock & Kennedy, Chtd., Wichita, Kan., for P.B. Hoidale Co., Inc.

Eldon L. Boisseau, Turner & Boisseau, Chartered, Wichita, Kan., for Employers Mut. Cas. Co.

Floyd E. Gehrt, William A. Larson, Gehrt and Roberts, Chartered, Topeka, Kan., for Lightner–Kanaga Ins., Inc.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This matter is before the court on cross motions for summary judgment, (Doc. 263, Joint Motion of Plaintiff and defendant P.B. Hoidale Co., Inc.); (Doc. 260, Motion of Employers Mutual), and plaintiff's motion to strike (Doc. 291). This is a declaratory action seeking to determine the liability of a primary insurance carrier, an excess insurance carrier, and their common insured for a judgment entered against the insured in state court. Jurisdiction is based upon diversity.

The court has previously outlined the essential facts of this case in its order of January 29, 1992. 782 F.Supp. 564. On July 1, 1987, a jury in Sedgwick County District Court returned a verdict in favor of one Cletus Doll for injuries Doll sustained while driving a tank truck near Lake Afton, Kansas. Defendant P.B. Hoidale Company, Inc. ("Hoidale") had installed a 25,000 gallon tank on the truck that separated in the course of the accident. The jury found Hoidale 55% at fault, and a judgment in the amount of $1,715,256 was entered against Hoidale.

The judgment against Hoidale exceeds its coverage under a $500,000 primary insurance policy issued to Hoidale by defendant Employers Mutual Casualty Company ("Employers"). Hoidale also had taken out an insurance policy for $1,000,000 excess coverage, which policy was issued by plaintiff Pacific Employers Insurance Company ("Pacific").

Pacific and Hoidale ("Movants")[1] jointly seek to hold Employers liable for the amount of the entire judgment against Hoidale—notwithstanding the $500,000 limit on the primary insurance policy that it issued. Movants allege that Employers is liable for the entire judgment because Employers: (1) failed to give timely notice to either Pacific or Hoidale that an excess claim had been made against Hoidale, thus depriving these parties of the opportunity

---

1. By stipulated agreement, the court has dismissed all claims that plaintiff and Hoidale had alleged against each other. (Doc. 300).

to protect their exposure to excess liability; (2) failed to consider the strength of Doll's case against Hoidale; and (3) failed to conduct settlement negotiations and advise Movants of settlement offers made by Doll. Stated another way, Movants claim that Employers is liable for the entire judgment entered against Hoidale due to Employers' alleged bad faith and/or negligence in handling the claims made against its insured.

### A. Summary Judgment on Factual Grounds

Both Movants and Employers claim that undisputed facts establish as a matter of law either the presence or absence, respectively, of Employers' bad faith or negligence in defending Hoidale.

■ Rule 56(c) of the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of the party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment is inappropriate if there is sufficient evidence on which a trier of fact could reasonably find for the nonmoving party. *Prenalta Corp. v. Colorado Interstate Gas Co.,* 944 F.2d 677, 684 (10th Cir.1991).

■ The burden of proof at the summary judgment stage is similar to that at trial. "Entry of summary judgment is mandated, after an adequate time for discovery and upon motion, against a party who 'fails to make a showing to establish the existence of an element essential to that party's case, and on which that party

will bear the burden of proof at trial.'" *Aldrich Enters., Inc. v. United States,* 938 F.2d 1134, 1138 (10th Cir.1991) (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact by informing the court of the basis for its motion. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. This burden, however, does not require the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* (emphasis in original). once the moving party properly supports its motion, the nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514; *Devery Implement Co. v. J.I. Case Co.,* 944 F.2d 724, 726 (10th Cir.1991). The court reviews the evidence in a light most favorable to the non-moving party, *e.g., Washington v. Board of Public Utilities,* 939 F.2d 901, 903 (10th Cir.1991), under the substantive law and the evidentiary burden applicable to the particular claim. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

■ The court has reviewed the parties' arguments and exhibits and finds that genuine issues of material fact exist precluding a grant of summary judgment in either party's favor on the issues of bad faith or negligence.

### B. Summary Judgment on Legal Grounds

Employers also contends that it is entitled to summary judgment on purely legal grounds. Employers contends that as a matter of law an excess carrier, such as Pacific, has no claim against a primary insurance carrier, such as itself, for its bad faith or negligence in failing to settle claims made against the common insured of the primary and excess carrier.

■ It is well-settled in Kansas that "[a]n insurance company may become liable for an amount in excess of its policy limits if it fails to act in good faith and

without negligence when defending and settling claims against its insured." *Glenn v. Fleming*, 247 Kan. 296, 305, 799 P.2d 79 (1990). *See also Bollinger v. Nuss*, 202 Kan. 326, 449 P.2d 502 (1969); *Smith v. Blackwell*, 14 Kan.App.2d 158, 162, 791 P.2d 1343 (1989), *review denied*, 246 Kan. 769 (1990).

 Employers assumes, for purposes of its legal arguments, that it was negligent or acted in bad faith in handling the claim against Hoidale, but nonetheless seeks to avoid any liability to *Pacific.* Employers claims that its liability to Pacific is barred by the absence of any contractual privity between Employers and Pacific or, in the alternative, by the absence of any direct legal duty toward Pacific sufficient to allow Pacific to pursue an independent tort action against Employers.

It is unnecessary to discuss these arguments in detail. Even in the absence of contractual or a direct legal duty, Kansas courts have allowed bad faith claims to be asserted under subrogation principles. *See, e.g., Gilley v. Farmer*, 207 Kan. 536, 544, 485 P.2d 1284 (1971) (plaintiff-creditor may stand in the shoes of defendant-debtor to assert defendant's bad faith claim against his insurer); *Bergeson v. Dilworth*, 749 F.Supp. 1555, 1558 (D.Kan.1990). Kansas cases have recognized both "conventional" subrogation, which is grounded in contract and "legal" subrogation, which is grounded in equity and arises by operation of law.

In *Insurance Co. of N. Am. v. Medical Protective Co.*, 768 F.2d 315, 321 (10th Cir.1985), the court applied Kansas law in holding that an excess insurance carrier had subrogation rights against a primary insurance carrier under an insurance policy providing that the excess carrier "shall be subrogated to the extent of any payment hereunder to all of insured's rights of recovery therefore." *Id.* at 320. [2] Recently, the Kansas Supreme Court expressly held "that an insured's breach of contract claim for bad faith or negligent refusal to settle

may be assigned." *Glenn*, 247 Kan. at 314, 799 P.2d 79.

In this case, the policy issued by Pacific to Hoidale provides:

> In the event of any payments under this policy, [Pacific] shall be subrogated to all the Insured's rights of recovery therefore against *any person or organization;* ....

(emphasis added). Clearly, this provision is sufficient under Kansas law to allow Pacific to assert any claims that Hoidale might have against Employers. *See also Maryland Casualty Co. v. American Family Ins. Group*, 199 Kan. 373, 429 P.2d 931, syl. ¶ 8 (1967) (under both conventional and equitable subrogation, excess carrier could assert claim against primary carrier who refused to pay settlement within primary policy limits).

Employers attempts to avoid subrogation by claiming that Pacific did not avail itself of the subrogation clause, but rather chose to sue Hoidale directly, alleging that Hoidale breached its obligation under the excess policy to notify Pacific of the suit. To the contrary, the record reflects that Pacific expressly relies on the subrogation clause as a basis for asserting its bad faith claim against Employers. (Plaintiff's Response, Doc. 294, at 9).

Finally, Employers claims that Pacific has alleged that Hoidale's "lack of notice was a contractual breach," and therefore that Pacific has admitted "that its insured (its subrogor) [Hoidale] has no rights." Employers' argument confuses the rights that Pacific challenged with this allegation, prior to Pacific's dismissal of its claims against Hoidale. The alleged breach of contract went only to Hoidale's rights as against *Pacific* under the excess insurance policy. By contrast, the rights asserted by Pacific under the subrogation clause are Hoidale's recovery rights as against *Employers* for its alleged bad faith in defending.

Regardless of the existence, or lack thereof, of any contractual relationship or

---

2. Although the existence of contractual subrogation rights would have been sufficient to allow the claim by the excess carrier, the court also went on to reject the claim that the excess carrier should be estopped from asserting equitable subrogation. 768 F.2d at 321.

other direct duty of Employers toward Pacific, the court finds that Pacific is entitled to subrogation to the rights of Hoidale against Employers.

### C. *Employers' Liability for Negligence of Defense Counsel*

■ Employers hired Daniel Bachmann to defend Hoidale in the personal injury action. Employers now argues that it is not responsible for any acts of negligence committed by Bachmann because Bachmann was an "independent contractor," and not an agent of Employers.

■ The court is aware that "[t]he *mere* fact an insurance company retains an attorney to represent an insured against a lawsuit does not mean the attorney is also the insurance company's attorney capable of binding the insurance company." *Bell v. Tilton*, 234 Kan. 461, 465, 674 P.2d 468 (1983) (emphasis added). Kansas also recognizes, however, that the attorney-client relationship is grounded in agency principles. *Professional Serv. Indus. v. Kimbrell*, 758 F.Supp. 676, 681 (D.Kan.1991).

In *Brinkley v. Farmers Elevator Mutual Ins. Co.*, 485 F.2d 1283 (10th Cir.1973), the court recognized these principles as applied to an insurance company which had hired an attorney to represent an insured:

Under Kansas law, the liability of a principal for the negligent acts of his agent is controlled by a determination as to whether, at the time in question, the agent was engaged in the furtherance of the principal's business to such a degree that the principal had the "right to direct and control" the agent's activities.

485 F.2d at 1286. Applying this rule, the court found that an insurance company was not liable for an attorney's tortious conduct in an accident occurring after a trial at which the attorney had represented the insured. The court also recognized, however, that "there was a principal and agent relationship between [the insurance company and the attorney] wherein [the attorney] was [the insurance company's] agent in matters respecting the litigation involving [the insurance's company's] insured...." *Id.*

There is no doubt that Bachmann, in representing Hoidale, was "engaged in the furtherance of [Employers'] business." The allegations of Bachmann's negligence relate directly to his actions in connection with his representation of Hoidale, not some collateral wrongful acts. There are also allegations strongly suggesting that Bachmann reported to and received directions from Employers, rather than Hoidale. Although Bachmann may have been acting as the agent of Hoidale, Bachmann also represented the interests of Employers, the principal who hired him. *See National Farmers Union Prop. & Casualty Co. v. O'Daniel*, 329 F.2d 60, 65 (9th Cir. 1964) (attorney hired by insurance company has two principals and company is liable for hired attorney's acts); *Petersen v. Farmers Casualty Co.*, 226 N.W.2d 226, 231 (Iowa 1975); *Continental Ins. Co. v. Bayless & Roberts, Inc.*, 608 P.2d 281, 294 (Alaska 1980).

Employers relies on *Insurance Co. of N. Am. v. Medical Protective Co., supra* at 1121, apparently for the proposition that under Kansas law, "misconduct" of an attorney hired by an insurance company can be attributed only to the client, not the insurance company. In that case, an attorney was hired by an insurance carrier to represent one defendant-insured, and this attorney allegedly made misrepresentations to plaintiff's counsel concerning the extent of the insured's policy limits. The same insurer also had issued an excess policy to another defendant-insured and sought to recover against this insured's primary carrier for bad faith in defending. The primary insurance carrier argued that the alleged misrepresentations should have been imputed to the excess carrier to estop the excess carrier from asserting its bad faith claim. The court denied the claim of estoppel, finding that any misconduct on the part of the first insured's attorney should only be attributed to the insured-client, and not the insurance company that had hired the attorney. The court also noted that the primary carrier had not shown that it had relied on the alleged misstatements of the attorney hired by the

other primary carrier, an essential element of an estoppel claim. 768 F.2d at 321.

The court is not persuaded that *Insurance Co. of N. Am.* has any application to this case. That case involved two different clients represented by two different attorneys hired by the insurance company. Under these attenuated circumstances, the bad faith claim asserted by the excess carrier was in no way tainted by misconduct of another attorney representing another client on an unrelated claim. In this case, by contrast, Hoidale—through Pacific—seeks to hold Employers liable for its attorney's negligence in fulfilling the insurance company's contractual duty to defend it in good faith and with due care. To the extent that Bachmann's conduct did not conform to this standard, Employers cannot claim that it, as Hoidale's insurer, has performed its duty. *See Anderson v. Southern Surety Co.,* 107 Kan. 375, 191 P. 583 (1920) (insurance company who takes charge of insured's defense is liable for negligent defense); *Boyd Bros. Transp. Co. v. Fireman's Fund Ins. Co.,* 729 F.2d 1407, 1410 (11th Cir.1984) (en banc); *Blakely v. American Employers' Ins. Co.,* 424 F.2d 728, 734 (5th Cir.1970); *Smoot v. State Farm Mutual Auto. Ins. Co.,* 299 F.2d 525, 530 (5th Cir.1962).

Thus, for purposes of the bad faith in defending claim made by Pacific (through Hoidale), any negligence on the part of Bachmann is attributable to Employers.

### D. *Punitive Damages, Lost Profits, and Attorney Fees*

Hoidale, separately from Pacific, has asserted claims for punitive damages, lost profits, and attorney fees, which damages are challenged by Employers.

#### 1. Punitive Damages

■ An insurer's duty to settle or defend in good faith is an obligation arising under contract, and in the absence of an independent tort, punitive damages are not allowed in such actions. *Guarantee Abstract & Title Co. v. Interstate Fire & Casualty Co.,* 232 Kan. 76, 79, 652 P.2d 665 (1982). Hoidale recognizes this rule, but argues that it has stated the independent tort of "breach of fiduciary duty" justifying an award of punitive damages.

■ For two reasons, the court finds no independent tort under the facts as alleged by Hoidale. First, the fiduciary duty of an insurance company toward its insured is one that arises by operation of contract, rather than by law. *Glenn v. Fleming,* 247 Kan. 296, 313, 799 P.2d 79 (1990); *Guarantee Abstract,* 232 Kan. at 79, 652 P.2d 665; *see also Denison State Bank v. Madeira,* 230 Kan. 684, 691, 640 P.2d 1235 (1982). It follows that an insurance company that fails to settle or defend in good faith breaches a contractual duty, for which no claim to punitive damages is cognizable.

■ Second, "there must be an independent tort resulting in *additional injury* before punitive damages can be recovered in a breach of an insurance contract action." *Guarantee Abstract,* 232 Kan. at 79, 652 P.2d 665 (emphasis added); *see also Equitable Life Leasing Corp. v. Abbick,* 243 Kan. 513, 516, 757 P.2d 304 (1988); *Heller v. Martin,* 14 Kan.App.2d 48, 54, 782 P.2d 1241 (1989). Hoidale has alleged no additional damages caused by an independent tort of breach of the fiduciary duty. To the contrary, Hoidale has specifically alleged that all of its damages "were the natural and probable consequences of the excess judgment," which in turn was caused by a breach of the duty to defend. Because the claimed injuries flow directly from the breach of the contractual duty to defend, there can exist no independent tort justifying an award of punitive damages.

Accordingly, punitive damages are not an issue that may properly be considered by the jury, and summary judgment on this claim will be granted.

#### 2. Attorney Fees

■ Hoidale claims attorney fees for Employers' refusal to pay the excess judgment claim asserted against Hoidale by Pacific. Hoidale asserts that such a claim is authorized under K.S.A. § 40–256, which provides in pertinent part:

That in all actions hereafter commenced, in which judgment is rendered against any insurance company ..., if it appear from the evidence that such company ... has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action, including proceeding upon appeal, to be recovered and collected as a part of the costs:....

Employers argues that the statute does not allow recovery of the insured's attorney fees under the procedural posture of this case, in which the insured seeks fees for its litigation expenses incurred in defending against the claim of an excess carrier.

The court finds no merit to Employers' argument. The Kansas cases have allowed recovery of attorney fees under K.S.A. § 40–256 if the insured's loss arising out of an excess judgment was caused by the insurer's unjustified refusal to settle or defend in good faith. *See Smith v. Blackwell*, 14 Kan.App.2d 158, 164–65, 791 P.2d 1343 (1989), *review denied*, 246 Kan. 769 (1990); *Coleman v. Holecek*, 542 F.2d 532, 538 (10th Cir.1976); *Covill v. Phillips*, 455 F.Supp. 485, 488–89 (D.Kan.1978) (insurer reasonably refused to pay insured's excess judgment); *United of Omaha Life Ins. Co. v. Reed*, 649 F.Supp. 837, 840 (D.Kan.1986). Whether an insurer had just cause to refuse to pay is determined under all the circumstances of the case, *Crawford v. Prudential Ins. Co. of Am.*, 245 Kan. 724, 736, 783 P.2d 900 (1989), viewed at the time prior to commencement of the action. *Sloan v. Employers Casualty Ins. Co.*, 214 Kan. 443, 444, 521 P.2d 249 (1974). Accordingly, the appropriateness of attorney fees under the statute must await a full development of the facts at trial.

### 3. Lost Profits

 Employers concedes that lost profits are recoverable for breach of an insurance policy. *See Royal College Shop v. Northern Ins. Co.*, 895 F.2d 670, 678–79 (10th Cir.1990); *Earth Scientists v. United States Fidelity & Guaranty Co.*, 619 F.Supp. 1465, 1475 (D.Kan.1985); *Hochman v. American Family Ins. Co.*, 9 Kan. App.2d 151, 673 P.2d 1200, syl. ¶ 2 (1984). Such damages are limited to those which may fairly be considered to arise " 'in the usual course of things, from the breach itself, *or* as may reasonably be assumed to have been within the contemplation of both parties as the probable result of the breach.' " *Royal College Shop*, 895 F.2d at 679 (quoting *Hochman*).

The court finds that genuine factual issues remain with respect to Hoidale's claim for lost profits.

### E. *Plaintiff's Motion to Strike*

Pacific has filed a motion to strike from the pretrial order the allegations of comparative fault made by Employers.[3] According to Pacific, an excess carrier has no duty to defend the insured against lawsuits. Thus, Pacific argues, because the primary carrier alone is responsible for the insured's defense, only Employers' fault is a proper issue in this action. *See Certain Underwriters of Lloyds v. General Accident Ins.*, 699 F.Supp. 732, 740 (S.D.Ind. 1988) (Indiana law; "An excess carrier owes no duty to the insured nor to the primary carrier either to defend the insured or to enter into settlement negotiations."), *aff'd*, 909 F.2d 228 (7th Cir.1990).

 In Kansas, the primary carrier retains the primary duty to defend. *See American Fidelity Ins. Co. v. Employers*

---

**3.** Employers has filed a motion for leave to file a supplemental response out of time with respect to plaintiff's motion to strike. (Doc. 329). Plaintiff opposes this motion. The court will grant Employers' motion to file the supplemental response. The court denies plaintiff's motion for sanctions.

Employers seeks to estop plaintiff from contesting the issue of plaintiff's comparative fault based upon statements made by plaintiff's counsel at a hearing conceding that "comparative negligence applies to the instant action." (Doc. 335, at 5). The court finds Employers' argument to be frivolous. As plaintiff correctly notes, the issue of an excess carrier's duty to defend is an issue of law for the court.

*Mutual Casualty Co.*, 3 Kan.App.2d 245, 255, 593 P.2d 14 (1979). When the primary carrier refuses to provide any defense, the Kansas Supreme Court has also indicated that the excess carrier has a duty to defend. *See Maryland Casualty Co. v. American Family Ins. Group*, 199 Kan. 373, 386, 429 P.2d 931 (1967) (under policy language, excess carrier had duty to defend); *accord United States Fidelity & Guaranty Co. v. Tri–State Ins. Co.*, 285 F.2d 579, 581 (10th Cir.1960).

■ On the other hand, it is well established in Kansas that—at least as to primary carriers—the duty to defend attaches if a "potential of liability" exists under the policy language. *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681, 686, 512 P.2d 403, 407 (1973).

The rule of *Spruill Motors* was applied to an excess carrier in *Southgate State Bank & Trust Co. v. United Pacific Ins. Co.*, 3 Kan.App.2d 37, 588 P.2d 486 (1979), where, as here, the primary carrier had provided a defense but the excess carrier had not. The insured feared an excess judgment and retained private counsel to assist the primary carrier in defending the suit. The action against the insured was settled for an amount within the primary policy limits, and the insured then sought to recover attorney fees from the excess carrier. The Kansas Court of Appeals stated the applicable rules:

> Rules governing the duty to defend vary according to the language of the policies and according to whether the company is the sole, primary, or the secondary insurer.
>
> Whether the carrier be the sole or the primary insurer, the duty to defend rests primarily on the possibility that coverage exists. This possibility may be remote, but if it exists the company owes the insured a defense. The possibility of coverage must be determined by a good-faith analysis of all information known to the insured or all information reasonably ascertainable by inquiry and investigation. However, where two insurance companies have issued general liability insurance policies to the same insured

and each is obligated to defend, if one company affords a defense, the insured is not damaged because of the failure of the other to defend.

3 Kan.App.2d at 38, 588 P.2d 486 (citations omitted). The court went on to hold that the insured could not recover attorney fees from its excess carrier, because the primary carrier had adequately defended the insured. Thus, although the court imposed a duty to defend upon the excess carrier if a "possibility of coverage" existed under its policy, the court exonerated the excess carrier due to lack of causation between its refusal to defend and the insured's damages.

Other courts and commentators have indicated that the excess carrier's duties may depend upon the facts of each case:

> Where the insured maintains both primary and excess policies, the general rule is that an excess liability insurer is not obligated to participate in the defense until the primary policy limits are exhausted. But if the primary insurer denies coverage, the excess insurer would be obligated to defend. But certain courts have held that the excess carrier must participate in the defense and share in the cost of defense when it is clear that the potential judgment against the insured may be substantially greater than the amount of the primary policy limits.

14 *Couch on Insurance 2d* § 51:36, at 446–47 (rev. ed. 1982). *See also Hocker v. New Hampshire Ins. Co.*, 922 F.2d 1476, 1480–85 (10th Cir.1991) (under policy language and Wyoming law, excess carrier had duty to monitor whether primary insurer was properly fulfilling its primary duty, and to "drop down and defend" if primary carrier refuses to defend); *Hartford Accidental & Indemnity Co. v. Continental Nat'l Am. Ins. Cos.*, 861 F.2d 1184 (9th Cir.1988) (California law; excess carrier not required to defend excess claim until primary paid its policy limits); *American Family Life Assurance Co. v. United States Fire Co.*, 885 F.2d 826, 832 (11th Cir.1989) (Georgia law; excess carrier contractually obligated to defend).

Even if the court is to apply the rule of *Spruill* to this excess carrier, Pacific would only have duty to defend based upon information that it either knew or could reasonably ascertain by inquiry or investigation. 212 Kan. at 686, 512 P.2d 403. Of particular significance in this case is that Pacific may have had no notice of the claim against its insured until only days before trial. If the facts at trial support this, it is difficult to understand how Pacific could have breached any potential duty toward its insured in failing to provide a defense.

On the other hand, there are allegations that Pacific learned of the lawsuit against its insured shortly before trial, and that it sent lawyer Debra Arnett to "monitor" the trial. As an abstract proposition, the court can conceive of a possible obligation on the part of Pacific to enter into settlement negotiations at this point—even though Pacific had been deprived of the opportunity to participate in pretrial investigations and settlement. The court also notes that Pacific has raised a possible attorney-client privilege relative to Arnett's communications to Pacific during the underlying trial.[4]

· It is clear to the court that neither of the parties have provided adequate briefing on certain issues. In the interest of avoiding unnecessary delay during trial, the parties shall prepare trial briefs to be filed on or before April 9, 1992 addressing the following issues: (1) the scope of the excess carrier's duty under Kansas law to defend or otherwise involve itself in the primary litigation as applied to the facts of this case; and (2) whether an attorney-client privilege protects disclosure of Debra Arnett's communications to Pacific, including, but not limited to, her impressions of the trial and/or the strength or weakness of Doll's claim against Hoidale. If such a privilege is claimed, Pacific shall specify whether it is made under state or federal law. *See In re A.H. Robins Co.*, 107 F.R.D. 2, 8 (D.Kan.1985).

Accordingly, the court hereby denies the joint motion of plaintiff and defendant P.B. Hoidale Co., Inc. for summary judgment. (Doc. 263). Further, the court denies the motion of Employers Mutual for summary judgment (Doc. 260), except as to the claim for punitive damages, which is granted. The court denies plaintiff's motion to strike (Doc. 291), and grants Employers' motion for leave to file supplemental response out of time (Doc. 329). The court denies plaintiff's motion (Doc. 337) to strike Employers' motion in opposition.

IT IS SO ORDERED.

---

**4.** The parties should note that one of the attorneys in *Insurance Company of N. Am., supra* at 1121, apparently gave testimony regarding communications to the insurance company—communications which Pacific suggests are confidential and therefore inadmissable. *See* 768 F.2d at 318.