No. 53,573

GUARANTEE ABSTRACT & TITLE CO., INC., *Appellee,* v. INTERSTATE FIRE AND CASUALTY COMPANY, INC., *Appellant.*

(652 P.2d 665)

Opinion filed October 22, 1982.

*George Maier, Jr.,* of Weeks, Thomas, Lysaught, Chartered, of Kansas City, argued the cause, and *Edward H. Powers, Sr.,* of Kansas City, was with him on the brief for appellee.

*Robert L. Kennedy,* of Fallon, Holbrook & Ellis, of Kansas City, argued the cause and was on the brief for appellant.

The opinion of the court was delivered by

McFARLAND, J.: This is an action by Guarantee Abstract and Title Company against its insurer, Interstate Fire and Casualty Company, Inc., seeking damages for the insurer's alleged mishandling of the defense of a third party action. The specific areas of claimed deficiency are failure to settle and failure to appeal.

The controversy herein is no stranger to our court. The original third party action which spawned the subsequent intramural litigation is *Ford v. Guarantee Abstract & Title Co.,* 220 Kan. 244, 553 P.2d 254 (1976). The dispute over the defense of the *Ford* case has, itself, previously been before us and appears as *Guar-*

*antee Abstract & Title Co. v. Interstate Fire & Cas. Co.,* 228 Kan. 532, 618 P.2d 1195 (1980). The complex factual situation involved herein has given rise to ten years of litigation. Rather than burden this opinion with a full history of this controversy, we will streamline the facts as much as possible. If additional information relative to the background of the case is desired, reference may be made to the two earlier opinions.

In 1972 Guarantee was an agency in the business of serving as a broker for Chicago Title Insurance Company in the sale of title insurance. The Fords were purchasing a home and title insurance was to be issued through Guarantee. A check in the amount of $25,746.13 was delivered to Guarantee by the realtor. Guarantee was instructed to deliver the check to the company holding the mortgage on the property *in exchange for* a mortgage release and a warranty deed. Guarantee delivered the check but received nothing in exchange. The release was subsequently forthcoming, but not the deed. Guarantee refused to insure the title or return the money.

The Fords sued everyone connected with the transaction including Guarantee and its principal Chicago Title. The verdicts in *Ford* were $8,687.65 compensatory damages against both Guarantee and Chicago Title. In addition, punitive damages of $35,000 were awarded against Guarantee and $70,000 against Chicago Title. On appeal these punitive damage awards were halved.

Guarantee brought this action against Interstate contending the insurance policy provided coverage for the *Ford* punitive damage award and also sought damages for the handling of the defense of the *Ford* case, specifically, failure to settle and appeal. Both parties appealed from the trial court's judgment and that judgment, along with our opinion relative thereto, is summarized in Syl. ¶ 4 of the opinion (hereinafter referred to as *Guarantee I*) as follows:

"[T]he record is examined and it is *held* the trial court erred in: 1) allowing coverage for punitive damages; 2) awarding attorney fees to Guarantee; 3) directing a verdict in favor of Interstate on the question of Interstate's duty to settle the case. The trial court did not err in: 1) finding Guarantee's promissory note to Chicago Title to be enforceable; and 2) finding Interstate had a duty to appeal on behalf of Guarantee in *Ford* and awarding costs of the appeal." 228 Kan. at 532.

On remand, trial to a jury was had with the following verdicts being awarded against Interstate:

|                  |                   | Compensatory | Punitive      |
|------------------|-------------------|--------------|---------------|
| Count I:         | Failure to Settle | $76,500.00   | $100,000.00   |
| Count II:        | Refusal to Appeal | $50,000.00   | $150,000.00.  |

The trial court modified the compensatory damage awards to conform to the evidence which resulted in the $76,500 judgment being reduced to $69,422.55 and the $50,000 judgment being reduced to $7,077.45. Interstate appeals from the judgments as modified.

The paramount issue in this appeal is whether the trial court erred in permitting the jury to consider the imposition of punitive damages.

In order to properly determine this issue, we must carefully examine the relationship of the parties and the nature of the claims being presented. Interstate is the insurer of Guarantee under a liability policy. Under the policy Interstate had a duty to defend when its insured was sued by third parties, the Fords. The policy contained the standard "duty to defend" clause:

"[A]nd the Company shall have the right and duty to defend in his name and behalf any suit against the Insured alleging damages, even if such suit is groundless, false or fraudulent . . . ."

Interstate did assume the defense of the Ford action on behalf of its insured. After the verdicts had been reached, Guarantee requested that an appeal be taken. Interstate declined to do so. Guarantee then perfected its own appeal. Subsequently, Guarantee brought this action seeking damages for what it believed was Interstate's wrongful failure to settle and failure to appeal. In a third party action, any duty of an insurer to settle or appeal on behalf of its insured arises from the insurer's contractual obligation to defend. Such actions are, accordingly, based upon breach of contract.

Damages for breach of contract are limited to pecuniary losses sustained and exemplary or punitive damages are not recoverable in the absence of an independent tort. *Temmen v. Kent-Brown Chev. Co.*, 227 Kan. 45, 605 P.2d 95 (1980). This exception to the rule of unavailability of punitive damages in breach of contract actions is recognized when some independent tort or wrong results in additional injury which justifies the assessment of punitive damages by way of punishment of the wrongdoer. In such a case the proof of the independent tort must indicate the presence of malice, fraud or wanton disregard for the rights of

others. The difference between a tort and contract action is that a breach of contract is a failure of performance of a duty arising under or imposed by agreement; whereas, a tort is a violation of a duty imposed by law. *Atkinson v. Orkin Exterminating Co.,* 230 Kan. 277, 634 P.2d 1071, *adopting* 5 Kan. App. 2d 739, 625 P.2d 505 (1981).

These general rules relative to breach of contract cases are also applicable to actions for breach of an insurance contract and, in the absence of an independent tort, punitive damages may not be allowed. *Spencer v. Aetna Life & Casualty Ins. Co.,* 227 Kan. 914, 611 P.2d 149 (1980); *Moffet v. Kansas City Fire & Marine Ins. Co.,* 173 Kan. 52, 244 P.2d 228 (1952).

Was there an independent tort in this case? We think not. Guarantee contends that Interstate committed the tort of bad faith in failing to settle. In *Spencer v. Aetna Life & Casualty Ins. Co.,* 227 Kan. 914, we held that the tort of bad faith is not recognized in Kansas. *Spencer* involved a certified question as to whether Kansas recognized the tort of bad faith and arose in the context of a first person action between an insurer and insured wherein the insured was seeking to utilize "bad faith" as the independent tort. The following language is particularly pertinent to the matter before us:

"It is clear this court had adopted the rationale that in third party claims an insurer, in defending and settling claims against its insured, owes a duty to the insured not only to act in good faith but also to act without negligence. *Farmers Ins. Exchange v. Schropp,* 222 Kan. 612, 567 P.2d 1359 (1977); *Rector v. Husted,* 214 Kan. 230, 519 P.2d 634 (1974); *Castoreno v. Western Indemnity Co. Inc.,* 213 Kan. 103, 515 P.2d 789 (1973); *Bollinger v. Nuss,* 202 Kan. 326, [449 P.2d 502 (1969)]. Although those duties are well established in a third party situation, Kansas cases have not gone so far as to find that the lack of good faith by an insurer in dealings on behalf of his insured rises to the level of an independent tort. Thus, the remedies available to a wronged insured in that instance remain limited to the insured's loss, even though that loss exceeds policy limits. There are, however, no Kansas cases adopting that rationale in first party situations." 227 Kan. at 922.

As previously noted, there must be an independent tort resulting in additional injury before punitive damages can be recovered in a breach of an insurance contract action. All injury to Guarantee herein flowed directly from the breach of the contractual duty to defend in the claimed particulars—failure to settle and failure to appeal. We conclude there was no independent tort upon which any punitive damages could be predicated in this case. The

two punitive damage awards totalling $250,000 are, of necessity, hereby vacated.

We could proceed to the next issue without further discussion, but to do so would be something of a disservice to the parties. Another matter relative to this issue needs to be stated.

Upon remand from *Guarantee I,* the jury essentially was instructed that if it found Interstate breached its duty to defend and if such conduct was wanton or wilful, then it could award punitive damages. The instructions wholly eliminated the required finding of an independent tort prior to allowance of punitive damages. The jury then was, in fact, awarding punitive damages on wilful or wanton breach of contract. This is precisely the error upon which the punitive damage award was reversed in *Atkinson v. Orkin Exterminating Co.,* 230 Kan. 227.

Unfortunately the seed from which this error sprang originated in our opinion in *Guarantee I.* After discussing various cases concerning an insurer's duty relative to settlement on behalf of an insured, we stated:

"These cases indicate plaintiff Guarantee could have a good cause of action against Interstate *in its tort action.*" (Emphasis supplied.) 228 Kan. at 537.

The emphasized portion of the sentence inadvertently, but erroneously, referred to Guarantee's claim of negligent conduct of the defense as a "tort action." As noted in Guarantee's brief, the case was thenceforth tried as a tort action by "direction of the Supreme Court." We hereby disapprove of that portion of the *Guarantee I* opinion.

Lamentable as the misstatement was in *Guarantee I,* it does point up an area of possible confusion of terminology. Over the years, courts have increasingly been dissatisfied that "good faith" in its ordinary sense was too low a test of acceptable conduct of an insurer in performing under an insurance contract. In the effort to raise the standard of conduct required of an insurer, other tests were utilized such as to act with due care, without negligence, fair dealing, etc. All of these terms are simply statements of the contractual obligation an insurer undertakes under a duty to defend. They do not create a new cause of action or authorize a different measure of damages. They merely seek to broaden the conduct which constitutes breach of contract.

These tests have grown close together with the passage of time.

As we stated in *Bollinger v. Nuss,* 202 Kan. 326, 449 P.2d 502 (1969):

"The dichotomy developed in the early cases, depending on whether the insurer's obligation was measured by good faith or due care, has tended to dissipate. Actually, the divergency between the good faith test and negligence test may be more a difference in verbiage than results. While the terms 'negligence' and 'bad faith' are not synonymous or interchangeable in a strict legal sense, they share common hues in the insurer's spectrum of duty, and the distinction between the tests is less marked than the terms would suggest. Professor Keeton, in his article *Liability Insurance and Responsibility for Settlement,* 67 Harv. L. Rev. 1136 (1954), emphasizes the lack of distinction by pointing out that even those jurisdictions following the bad faith rule recognize, at least by implication, that the company must, if it fails to settle, defend with ordinary care, and that negligence in investigation which leads to a mistake in failing to settle is also a breach of this duty of ordinary care of defense. Furthermore, a minimizing effect of the distinction is the adoption by some courts of a dual standard requiring not only good faith as to the decision regarding settlement, but also ordinary care in the investigation leading to such decision. [cites omitted] We further noted . . . that in the more recent cases the two tests have tended to coalesce, so that even those courts which reject the negligence test and apply exclusively the test of good faith, nonetheless, consider the insurer's negligence relevant in determining whether or not the insurer exercised the requisite good faith." 202 Kan. at 335.

So in summary, a claim that an insurer acted negligently in performing its contractual duty to defend on behalf of the insured does not create a tort action or alter the measure of damages which may be recovered.

We turn now to the next issue. Interstate contends the trial court erred in permitting Bill Fabian, an attorney, to testify as an expert witness. Specifically, Interstate contends it assumed Mr. Fabian would be called as a fact witness and that it was surprised and prejudiced by being confronted with the attorney in an expert capacity. The record belies this contention. Interstate knew months before trial that Mr. Fabian was a possible expert witness for Guarantee. Additionally, the trial court, upon hearing Interstate's complaint, permitted the taking of the witness's deposition a week before he was called to testify. Admission of expert testimony is within the wide discretion of the trial court. *Lindquist v. Ayerst Laboratories, Inc.,* 227 Kan. 308, 607 P.2d 1339 (1980). No abuse of discretion has been shown.

For its next issue, Interstate contends the jury was inadequately instructed relative to Guarantee's failure to promptly notify Interstate of the Ford claim. On appellate review, instructions are to

be read together, without isolating one and considering it in a vacuum. *Hampton v. State Highway Commission,* 209 Kan. 565, 577, 498 P.2d 236 (1972). The instructions have been reviewed and no reversible error in this regard has been shown.

Other issues raised are not reached by virtue of the result reached on the punitive damage issue hereinbefore determined.

The judgments relative to actual damages are affirmed; the judgments awarding punitive damages are vacated.

FROMME, J., not participating.