Patricia M. OSGOOD, Administratrix With-Will-Annexed of the Estates of Delbert A. Stroud and Gertrude Evelyn Stroud, Deceased, Plaintiff-Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.

No. 86–1427.

United States Court of Appeals, Tenth Circuit.

May 26, 1988.

Kevin D. Buchanan (Denzil D. Garrison, with him on the brief), Garrison, Brown, Carlson & Buchanan, Bartlesville, Okl., for plaintiff-appellant.

Joseph F. Glass of Best, Sharp, Thomas, Glass & Atkinson (Joseph A. Sharp; and Jody R. Nathan of Thomas, Glass, Atkins, Haskins, Nellis & Boudreaux, with him on the brief), Tulsa, Okl., for defendant-appellee.

Before MOORE and BALDOCK, Circuit Judges, and O'CONNOR, District Judge.*

EARL E. O'CONNOR, District Judge.

Appellant, Patricia M. Osgood, appeals from a district court order granting a motion for partial summary judgment filed by the appellee, State Farm Mutual Automobile Insurance Company [hereinafter "State Farm"]. Count II of the appellant's complaint, which alleged fraud and requested punitive damages, was dismissed on the ground that it failed to state a cognizable claim under Kansas law. On appeal, the appellant contends that the fraud claim was an independent tort entitling her to seek punitive damages from State Farm.

The facts, viewed in the light most favorable to the appellant, are as follows. On October 3, 1982, Delbert A. and Gertrude Evelyn Stroud [hereinafter "the Strouds"] were killed in an automobile accident in Osage County, Oklahoma, as a result of the negligence of another driver, Eugene Wells. At the time of their deaths, the Strouds were insured by State Farm. During negotiations with Wells' liability insurance carrier, representatives of the estates contacted State Farm, inquiring about the limits of the underinsured motorist coverage contained in the Strouds' State Farm policy. Agents of State Farm allegedly indicated that the Strouds only had the minimum underinsured motorist coverage; in Kansas, the minimum coverage was $25,-000.00 per person and $50,000.00 per accident. Based on this information, the Strouds' estates settled with Wells for the full amount of his liability coverage. State Farm received payment from the settlement through its subrogation rights. Since the Strouds' underinsured coverage purportedly equaled or was less than Wells' liability coverage, the estates made no claim on the State Farm policy.

In March of 1984, the heirs of the estates discovered information indicating that the Strouds' State Farm policy provided more underinsured motorist coverage than originally represented by the insurance company; the policy provided coverage of $100,-000.00 per person and $300,000.00 per accident. The estates made a demand upon State Farm for proceeds under the underinsured provisions of the policy, which State Farm refused to pay. The appellant, as administratrix of the estates, filed the action which is the subject of this appeal. Her complaint first alleged a contract claim under the underinsured motorist provisions of the Strouds' policy for damages totaling $187,526.80.[1] In Count II, the appellant alleged that representatives of State Farm made "fraudulent, intentional, false and material misrepresentations" pertaining to the underinsured motorist coverage. Appellant further alleged that the misrepresentations were made to induce the estates to settle all their claims under Wells' liability coverage and to forego their rights under the underinsured motorist provision of the State Farm policy. The appellant claimed compensatory damages of $187,-526.80, plus punitive damages.

State Farm filed a motion for partial summary judgment. In its motion, State Farm argued that Count II asserted a claim of "bad faith" and that Kansas law[2] did not recognize such a claim. The appel-

---

* Honorable Earl E. O'Connor, Chief Judge of the United States District Court for the District of Kansas, sitting by designation.

1. This amount reflects the difference between the amount of money collected by the estates from Wells' insurer and the amount of coverage provided under the State Farm policy.

2. The parties conceded to the trial court that Kansas law governed the action.

lant responded, asserting that Count II alleged a claim of fraud or misrepresentation and that Kansas law permitted such actions against insurance companies. The trial court ruled in favor of State Farm and dismissed Count II of the complaint. After a jury trial commenced, the parties reached a settlement on the claim for proceeds under the policy. Appellant then filed a timely notice of appeal with respect to the dismissal of Count II and her claim for punitive damages.

In reviewing a summary judgment order, the appellate court applies the same standard employed by the trial court under Rule 56(c) of the Federal Rules of Civil Procedure. *Ewing v. Amoco Oil Co.*, 823 F.2d 1432, 1437 (10th Cir.1987). When a motion for summary judgment is granted, it is the appellate court's duty to examine the record to determine if any genuine issue of material fact was in dispute; if not, the court must decide if the substantive law was correctly applied. *APC Operating Partnership v. Mackey*, 841 F.2d 1031, 1033 (10th Cir.1988); *Franks v. Nimmo*, 796 F.2d 1230, 1235 (10th Cir.1986). During this review, the court must examine the record in the light most favorable to the party opposing the motion. *Ewing v. Amoco Oil Co.*, 823 F.2d at 1437. In this case, the facts as alleged in Count II were strenuously disputed. However, the trial court determined that any factual disputes were not material, and that the allegations failed to state a claim under Kansas law. In this situation, we are left to determine if the district court correctly applied the substantive law.

The district court dismissed Count II of the complaint on the ground that Kansas law "does not permit plaintiff to bring an action sounding in fraud ... since all damages (save the punitive damages) flow from State Farm's alleged breach of its contractual duties and since plaintiff has alleged no independent or additional injury." In dismissing the claim on this ground, the trial judge implicitly determined that appellant's claims arose from the insurance contract between the Strouds and State Farm. Inasmuch as appellant does not dispute this assumption, her claim of fraud and request for punitive damages must be judged on the basis of Kansas law as it pertains to the availability of punitive damages for contract-based claims.

Kansas has long applied the rule that in actions for breach of contract, damages generally are limited to the pecuniary losses sustained; exemplary or punitive damages are not recoverable in the absence of an independent tort which causes additional injury to the complaining party. *Plains Resources, Inc. v. Gable*, 235 Kan. 580, 593–94, 682 P.2d 653, 664 (1984) (quoting *Guarantee Abstract & Title Co. v. Interstate Fire & Cas. Co.*, 232 Kan. 76, 78, 652 P.2d 665, 667 (1982)). The Kansas Supreme Court discussed this "independent tort" exception in *Guarantee Abstract:* "Th[e] exception to the rule of unavailability of punitive damages in breach of contract actions *is recognized when some independent tort or wrong results in additional injury which justifies the assessment of punitive damages* by way of punishment of the wrongdoer. In such a case the proof of the independent tort must indicate the presence of malice, fraud or wanton disregard for the rights of others." *Guarantee Abstract*, 232 Kan. at 78–79, 652 P.2d at 667 (emphasis added). These general rules have been specifically applied to claims involving insurance contracts, where courts have required the presence of an independent tort causing additional injury before allowing the plaintiff to assert a claim for punitive damages. *See, e.g., United of Omaha Life Ins. Co. v. Reed*, 649 F.Supp. 837, 839–40 (D.Kan.1986); *Guarantee Abstract*, 232 Kan. at 79, 652 P.2d at 667; *Moffet v. Kansas City Fire & Marine Ins. Co.*, 173 Kan. 52, 57, 244 P.2d 228, 233 (1952). With these general rules in mind, we must determine whether or not the district court erred in ruling that Count II failed to state sufficient facts to support a claim for punitive damages.

The allegations of appellant's complaint parallel the elements of actionable fraud

under Kansas law.[3] In its motion for summary judgment, State Farm asserted that these allegations constituted a claim based on the "tort of bad faith" which has not been recognized by Kansas courts. The tort of bad faith, recognized in some jurisdictions, permits a person covered by an insurance policy to sue their insurer when the company unreasonably refuses to pay a claim or otherwise carry out its contractual obligations. *See, e.g., Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973).

State Farm is correct in asserting that Kansas law does not recognize the tort of bad faith in the context of "first party" litigation against insurance companies. In *Spencer v. Aetna Life & Cas. Ins. Co.,* 227 Kan. 914, 611 P.2d 149 (1980), the parties raised the question of whether Kansas should recognize the tort of bad faith against insurance companies. *Id.* at 916, 611 P.2d at 150. Finding that state laws regulating insurance companies adequately protected policy-holders from abusive tactics by insurers, the court saw no reason to recognize a new cause of action in this situation. *Id.*

There is a clear distinction, however, between a claim of fraud and a claim of "bad faith." Both *Spencer* and *Guarantee Abstract* involved issues of whether a plaintiff could assert the tort of bad faith against a defendant-insurer *who failed to pay under the terms of its insurance policy. See NL Indus., Inc. v. Gulf & Western Indus., Inc.,* 650 F.Supp. 1115, 1132 (D.Kan.1986). The failure to recognize the tort of bad faith, however, does not bar an insured from bringing other types of tort actions against his or her insurer. For instance, in one case the plaintiffs were permitted to bring an action for the tort of outrage when their insurer refused to pay a claim. *State Farm Fire & Cas. Co. v. Liggett,* 236 Kan. 120, 122–23, 689 P.2d 1187 (1984). In other cases, Kansas courts have allowed the insured to pursue claims based on fraud and misrepresentation. *See, e.g., United of Omaha Life Ins. Co. v. Reed,* 649 F.Supp. 837, 839 (D.Kan.1986) (misrepresentation claim allowed); *Earth Scientists (Petro Serv.) Ltd. v. United States Fidelity & Guar. Co.,* 619 F.Supp. 1465, 1472–73 (D.Kan.1985) (permitting fraud claim against insurance company); *Dreiling v. Home State Life Ins. Co.,* 213 Kan. 137, 515 P.2d 757 (1973) (recision of insurance contracts permitted due to fraudulent misrepresentations of insurer's agents). Clearly Kansas law does not per se prohibit actions against insurance carriers for fraud or misrepresentation.

This finding, however, does not end our analysis. As stated earlier, Kansas law only permits punitive damages in contract actions when (1) there is some independent tort amounting to fraud or wanton conduct, and (2) the independent tort results in additional injury. *See Guarantee Abstract,* 232 Kan. at 78, 652 P.2d at 667. In the instant case, appellant has failed to allege any additional injury arising from State Farm's alleged misrepresentations. In her complaint, she requested the same amount of actual damages on both her contract and tort claims; this amount equaled the difference between the policy coverage and the amount actually received by the estates. Significantly, appellant's counsel conceded during his offer of proof before trial that the pecuniary and nonpecuniary damages claimed in both counts were identical. (Rec., Vol. II, p. 9–10.)[4]

---

**3.** To establish a claim for fraud, a plaintiff must allege and prove four elements: (1) the defendant knowingly made untrue statements of fact; (2) the statements were made with the intent to deceive or recklessly made with disregard for the truth; (3) the plaintiff justifiably relied on the statements; and (4) the plaintiff was damaged. *Nordstrom v. Miller,* 227 Kan. 59, 65, 605 P.2d 545, 551–52 (1980).

**4.** THE COURT: ... Should I understand that the significance of the offer is this: Cause of action Number Two sought the same measure of compensatory damages as Cause of Action Number One, if I recall, and in that regard, of course, if Plaintiff prevails on the compensatory damages, to include both pecuniary and non-pecuniary elements here, the same compensation would flow as if cause of action two had been presented and Plaintiff succeeded, it is the punitive damages that represent the differential; is that what we are talking about?

MR. GARRISON: Yes, sir. This offer of proof touches upon our prayer for punitive damages based on fraud.

Appellant contends that the Kansas courts, in actual practice, have not required a showing of additional damages in these types of cases. She cites various Kansas decisions where the courts have discussed the requirement of an independent tort without specifically mentioning the need for additional or independent damages. *See, e.g., Nordstrom v. Miller,* 227 Kan. 59, 605 P.2d 545 (1980); *Dold v. Sherow,* 220 Kan. 350, 552 P.2d 945 (1976); *Atkinson v. Orkin Exterminating Co., Inc.,* 5 Kan. App.2d 739, 625 P.2d 505, *aff'd,* 230 Kan. 277, 634 P.2d 1071 (1981).

We need not address the appellant's interpretation of the above cases. In more recent decisions, the Kansas Supreme Court has expressly required plaintiffs to show additional injuries in order to recover punitive damages. For example, in *Plains Resources, Inc. v. Gable,* 235 Kan. 580, 682 P.2d 653 (1984), the state supreme court affirmed a judgment awarding compensatory and punitive damages to the plaintiff. The plaintiff had brought a claim for breach of an oil and gas drilling contract and related tort claims; the tort claims arose from damage done to plaintiff's oil well when it was sabotaged by defendant's agent. *Id.* at 581–82, 682 P.2d at 655. The court found that the sabotage constituted an independent tort and that *separate* damages for the sabotage were included in the lump sum compensatory award entered by the trial court. *Id.* at 593, 682 P.2d at 664. Since there was an independent tort resulting in additional damages, the court permitted the fact finder's award of punitive damages to stand. *Id.*

In *Cornwell v. Jespersen,* 238 Kan. 110, 708 P.2d 515 (1985), the court dismissed a punitive damage claim for the express reason that the plaintiff had not alleged or proved additional injury arising from an independent tort. The plaintiffs brought an action for damages to their crops and land allegedly arising from the defendants' oil drilling activities. The plaintiffs, as third-party beneficiaries, contended that de-

fendants had failed to fulfill certain duties imposed on them under the terms of oil and gas leases. *Id.* at 111–14, 708 P.2d at 517–19. The trial court awarded the plaintiffs compensatory and punitive damages. On appeal, the supreme court vacated the judgment awarding punitive damages. After reciting the general rules regarding the availability of punitive damages in actions for breach of contract, the court found that the plaintiffs had failed to prove additional damages flowing from an independent tort. "All injury to the plaintiffs flowed directly from the breach of the defendants' contractual duty to fill the holes, restore the surface and pay damages. Their failure to do so—even if intentional or unjustified—was not an independent tort causing *additional* injury." *Id.* at 121, 708 P.2d at 524 (emphasis in original).

The requirement of additional injury also has been imposed by federal courts applying Kansas law. *See, e.g., Mackey v. Burke,* 751 F.2d 322, 329 (10th Cir.1984) (plaintiffs failed to show the alleged independent tort caused additional damages beyond those suffered by the breach of contract); *United of Omaha Life Ins. Co. v. Reed,* 649 F.Supp. 837, 840 (D.Kan.1986) (plaintiff failed to allege any additional injury or damages caused by the insurer's alleged misrepresentations). Based on this clear authority, we must reject appellant's argument that additional injury is not required.

Appellant's final argument on appeal is that she has, in fact, sustained additional damages in the nature of attorney's fees and litigation costs. We find this argument unpersuasive. Appellant's complaint clearly requested damages in the amount purportedly *due under the insurance contract;* no additional sum was claimed in Count II. Furthermore, in a hearing before the trial court, appellant's counsel conceded that the actual damages claimed in both counts of the complaint were the same. (Rec., Vol. II, p. 9–10).

THE COURT: Yes, that's right. But the compensatory damages are in common between Cause of Action Number One and Cause of Action Number Two?

MR. GARRISON: That's right, yes, sir.

In summary, the court finds that Kansas law required the appellant to allege and prove an independent tort which resulted in additional damages in order to recover punitive damages. Appellant's complaint clearly failed to allege separate or independent damages arising from State Farm's purported misrepresentations. In addition, she conceded before the trial court that the actual damages sustained under both the contract and fraud claims were identical. By failing to allege additional damages, she is barred from seeking punitive damages. Accordingly, the judgment of the district court is AFFIRMED.